**Electronically Filed: June 16, 2014**

**LIONEL SAWYER & COLLINS**
Rodney M. Jean, NBN 1395
*rjean@lionelsawyer.com*
Maximiliano D. Couvillier III, NBN 7661
*mcouvillier@lionelsawyer.com*
300 S. 4th St., Ste. 1700
Las Vegas, Nevada 89101
Telephone: 702-383-8888
Facsimile: 702-383-8845

**LANDWEHR LAW FIRM**
Darryl T. Landwehr, *Admitted Pro Hac Vice*
*dtlandwehr@aol.com*
1010 Common Street, Suite 1710
New Orleans, Louisiana 70112
Telephone: 504-561-8086

*Attorneys for Whitney Bank*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>MARCIA CARRERE,<br><br>            Debtor.<br>_____<br>Whitney Bank,<br><br>            Plaintiff,<br><br>v.<br><br>Marcia Carrere,<br><br>            Defendant. | Case No.: 13-11728-LED<br>Chapter 7<br><br><br><br><br>Adv. Proceeding No. _____ . |

## COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE OR, ALTERNATIVELY, FOR DISMISSAL OF CASE PURSUANT TO 11 U.S.C. § 707(b)

Creditor and party in interest Whitney Bank, adversary plaintiff herein, seeking the entry of an order denying the debtor a discharge pursuant to 11 U.S.C. § 727(a)(3), (a)(4)(A) and (a)(4)(B), or, alternatively, dismissal of the instant Chapter 7 case pursuant to 11 U.S.C. § 727(b), alleges:

### Jurisdiction

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §

727.

2.

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**Parties**

3.

Defendant herein, Marcia Carrere ("Carrere"), filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code, on March 6, 2013.

4.

Adversary Plaintiff, Whitney Bank, is a creditor of the debtor/defendant, Marcia Carrere.

5.

Prior to the filing of her voluntary petition, on or about June 2, 2005, the debtor's spouse, Larry Carrere, formed a limited liability company by the name of Lamar Construction & Development, LLC ("Lamar").

6.

In connection with her Chapter 7 case, on April 21, 2013, Carrere filed her bankruptcy schedules therein listing secured claims in the total amount of $534,994.00, unsecured priority claims in the amount of $7,335.00, unsecured nonpriority claims in the amount $157,304.66, monthly gross income of $7,324.80, net monthly take home pay of $5,323.62, and monthly expenses in the amount of $7,408.77.  ECF # 33.

7.

In Carrere's original Bankruptcy Schedule D, entitled "Creditors Holding Secured Claims, she listed four (4) separate debts that totaled $534,994.00, without any description or designation being made as to whether any of these debts were "consumer debts," as opposed to "business

debts," under Section 101(8) of the Bankruptcy Code.[1]

8.

In Carrere's original Bankruptcy Schedule E, entitled "Creditors Holding Unsecured Priority Claims," a total of four (4) debts were listed, three (3) of which, totaling $6,335.00, were designated by the debtor as "business debts," and the one (1) remaining priority debt, in the amount $1,000.00, bore no designation at all.

9.

In Carrere's original Bankruptcy Schedule F, entitled "Creditors Holding Unsecured Nonpriority Claims," said debtor listed seventy-six (76) debts or claims. Of these seventy-six (76) scheduled unsecured debts, fifty-two (52) were listed in an "unknown" amount, forty-two (42) were listed as "business debts", and, excluding those debts listed in an "unknown" amount, the "business debts" purported to total some $134,144.66 of the total scheduled unsecured nonpriority debt of $157,304.66, or more than 50% of the total scheduled unsecured debt.

10.

Carrere's original Bankruptcy Schedules were signed under penalty of perjury.

11.

On May 31, 2013, Carrere filed Amended Bankruptcy Schedules, therein amending Schedules A, B, D, E, F, H and I of her original schedules (hereinafter the "Amended Schedules"). ECF #50.[2]

12.

In the Amended Schedules, specifically with respect to Amended Schedule E, the debtor

---

[1] 11 U.S.C. § 101(8) provides that the term "consumer debt" means debt incurred by an individual primarily for a personal, family or household purpose.

[2] Carrere also later amended her Amended Bankruptcy Schedules D, E, and F on July 9, 2013, however, there appear to be no discernible changes made in the second amended schedules filed on July 9, 2013 from those contained in the Amended Schedules filed on May 31, 2013,

3

removed a purported "business debt" to the City of New Orleans in the amount of $2,785.00, thereby reducing the original Bankruptcy Schedule E priority "business debt" to $3,550.00.

13.

Upon information and belief, however, the two (2) debts to the City of New Orleans totaling $3,550.00 relate to real estate taxes and which claims are solely *in rem* in nature and can only can be enforced by asserting or recording a lien on the real property located at 2412 Pressburg Street, New Orleans, Louisiana. Consequently, to the extent such claims are for real estate taxes on the real property located at 2412 Pressburg Street, nonpayment of those taxes can only be enforced against the real property itself.  Given such, these claims are not ones on which the debtor is personally liable, and would not comprise a "debt" under Section 101(a)(12) of the Bankruptcy Code.

14.

In Carrere's Amended Bankruptcy Schedule F, said Debtor removed some thirty-nine (39) previously scheduled unsecured debts listed on her original Bankruptcy Schedules.  After discounting the thirty-three (33) of the thirty-nine (39) removed unsecured claims that were originally listed as "unknown" in amount in Carrere's original Schedule F, there were six (6) removed claims that totaled $67,666.00.

15.

Carrere's Amended Schedules were also signed under penalty of perjury.

16.

Commencing with Carrere's Amended Schedule D, upon information and belief, the 2005 Dodge Ram purchased by Carrere's spouse, Larry Carrere, which purchase was financed by Clark County Credit Union, and the 2007 Mobile RV, the purchase of which was financed by Santander Consumer USA, were acquired for Carrere's and/or her spouse's personal and/or family use and,

with respect to Schedules D, E, and F.

therefore, comprise "consumer debts" pursuant to Section 101(8) of the Bankruptcy Code.

17.

Upon information and belief, and as Carrere testified at her examination taken in the within Chapter 7 case, the property at 106 Lefleur, in Slidell, Louisiana, comprised a place of residence and/or abode for both Carrere and her spouse, Larry Carrere. Accordingly, the debt secured by this property, in the scheduled amount of $278,192.00, also comprised a "consumer debt" under Section 101(8) of the Bankruptcy Code.

18.

Based on the foregoing, with respect to the secured claims scheduled by the debtor in her Amended Schedule D, the consumer debts verses the business nature of such secured debts are summarized as follows:

(i)  American Home Mortgage (mortgage on 2412 Pressburg) – $169,000.00 (business debt).

(ii) Clark County Credit Union (security interest in 2005 Dodge Ram) - $6,000.00 (consumer debt).

(iii)  Santander Consumer USA (security interest in 2007 Mobile Suite RV) - $81,802.00 (consumer debt).

(iv)  Whitney Bank (mortgage on 106 Lefleur, Slidell, LA) - $278,192.00 (consumer debt).

19.

Accordingly, debtor's total secured "consumer debt," as of the petition date, was $365,994.00 versus some $169,000.00 in secured business debt.[3]

20.

Returning to the debtor's Amended Schedule F, entitled "Creditors Holding Unsecured Claims", the first debt listed to "ACS" is designated as a personal student loan in the amount of

---

[3]  The  actual  amount  of  the  Carrere's  indebtedness  to  American  Home  Mortgage Servicing, i.e., $169,000.00, may be lower as the collateral for this loan, upon information and

$11,000.00.

21.

After seeking and compelling the production of documents regarding the debts scheduled by Carrere in her Amended Schedules, however, it was discovered that, pursuant to correspondence issued by ACS to Carrere under date of February 28, 2013, the actual amount of the said debtor's personal or consumer debt to ACS was $22,474.27, and not the scheduled amount of $11,000.00.

22.

Moreover, during the course of the examination taken of Carrere in this case said debtor testified, when presented with a collection notice issued by ACSI on the date of February 28, 2013, that the correct amount of the indebtedness to ACSI for the personal student loan was $22,474.27 as listed in the collection notice and not the sum of $11,000.00 listed for ACSI in her amended schedule F.

23.

The collection notice issued to Ms. Carrere by ACSI on the afore-described student loan was issued to her more than three (3) months prior to filling of her Amended Schedule F and, accordingly, the debtor intentionally, knowingly and fraudulently decreased the scheduled amount of this consumer debt for the purpose of ensuring that the total amount of her scheduled consumer debt did not exceed the total amount of her scheduled business debt.

24.

Also in Carrere's Amended Bankruptcy Schedule F, said debtor listed a debt to Bank of America Credit Express, as a "business debt – Southern Food and Caterers" in the amount of $3,000.00; however, Carrere could not produce any documents supporting or reflecting her liability to or a personal indebtedness of herself to Bank of America Credit Express.

belief, was foreclosed on prepetition.

25.

Also in Carrere's Amended Bankruptcy Schedule F, said debtor listed a Benfatti Air Conditioning and Refrigeration, Inc. as a "business debt" in the amount of $7,621.00. However, according to a February 24, 2010 request for payment correspondence issued by Benfatti Air Conditioning and Refrigeration, Inc. to Larry Carrere, the debtor's spouse, this account was in the name of Larry Carrere at the address of 291 Debby Drive, Slidell, Louisiana, and the sum of $7,620.07 was being sought from the debtor's spouse.

26.

At her examination held in this case, Carrere testified that the limited liability company Lamar did not own the property at Debby Drive, that this debt was incurred by Larry Carrere and that her husband, Larry Carrere, resided at that property for a time.

27.

The foregoing notwithstanding, Carrere nonetheless intentionally, knowingly and fraudulently scheduled the debt incurred by her husband to Benfatti Air Conditioning and Refrigeration, Inc. as a "business debt" in lieu of a consumer debt.

28.

Also in her Bankruptcy Schedule F, Carrere listed Capital Management Services I as a "personal debt" in an "unknown" amount.

29.

Carrere, however, could not produce and, upon information and belief, failed to preserve and maintain the documents and records reflecting the actual balances on this account and without justification.

30.

Furthermore, upon information and belief, the address provided for Capital Management

Services, I is knowingly incorrect, inaccurate and/or not updated, with the motive, design and intent of Carrere to avoid further investigation as to the actual of the amount of this personal or consumer debt of Carrere.

31.

Also in her Amended Bankruptcy Schedule F, Carrere lists a purported "business debt" in favor of Capital One Small Business in the amount of $50,000.00.

32.

Upon information and belief, however, the scheduled indebtedness to Capital One Small Business is, in fact, a debt of Lamar, and not a debt of Carrere or one for which she is personally obligated.

33.

Upon further information and belief, Carrere knowingly and intentionally scheduled the Capital One Small Business debt of Lamar for the purpose of artificially inflating the amount of her scheduled "business debt" to ensure that it exceeded the amount of her personal or "consumer debt".

34.

Also in her Amended Bankruptcy Schedule F, Carrere listed an indebtedness to Check City Partnership, LLC, as a personal debt in an "unknown" amount.

35.

During the course of Ms. Carrere's examination held in this proceeding, and when presented with a document she produced, i.e., a Receipt for Extension of Loan issued by Check City Partnership, LLC, Carrere recanted her scheduling of this indebtedness as "unknown" and testified that the actual balance on this account is $800.00.

36.

In her Amended Bankruptcy Schedule F, debtor lists the "City of New Orleans Health

Department" as a creditor holding business debt for taxes in the amount of $1,200.00. The documents produced by Carrere in support of this indebtedness, however, reflect the existence of two "Notices of Judgment" with one being issued against Larry Carrere in the amount of $500.00 and the other being issued against Larry Carrere and the debtor in the amount of $575.00. The actual liability for these judgments may only be *in rem* or, alternatively, are overstated by $125.00.

37.

Also in her Amended Bankruptcy Schedule F, Carrere listed "Coface Collections North America, Inc." as a "business debt" in the amount of $4,364.00.

38.

When questioned concerning this debt through the course of her examination taken in the within Chapter 7 case, debtor testified that Coface Collections North America, Inc. was, in fact, actually a collection agent for an unknown insurance company.

39.

Upon information and belief, the indebtedness of Coface Collections North America, Inc., to the extent it exists or to the extent it is a collection agent for some other undisclosed entity, is actually a debt of Lamar, and not of Marcia Carrere individually.

40.

Upon further information and belief, and in an effort to bolster or increase the amount of her scheduled business debt in relation to the amount of her scheduled consumer debt, Carrere intentionally, with malice aforethought, fraudulently, and with the assistance of her non-filing spouse, included debts of the limited liability company "Lamar" as "business debts" of herself notwithstanding the fact that she was not personally obligated for the Coface Collections North America, Inc. scheduled debt.

41.

At the time of the filing of her voluntary petition, and upon information and belief, Carrere and her spouse were well aware of the application of the means test under Section 707 of the Bankruptcy Code and its applicability to all debtors whose debts were primarily consumer or personal in nature as opposed to business in nature, including the fact that her average income based on her earnings over the six (6) month period prior to the filling of her bankruptcy petition exceeded the median income for the geographical area in which she resided.

42.

By intentionally listing debts of Lamar as "business debts" of herself, Carrere knowingly, intentionally, and with malice aforethought, sought to avoid application of the means test under Section 707 of the Bankruptcy Code and to obtain a discharge under Chapter 7 of the Bankruptcy Code by falsely inflating the amount of her "business debt" to the extent it exceeded her actual consumer debt.

43.

Also in her Amended Bankruptcy Schedule F, debtor listed "Direct TV" as a "personal" debt in an "unknown" amount; however, when questioned about documents reflecting the amount of the personal indebtedness to Direct TV at her examination held in this case, said debtor contended that the indebtedness was based on a statement; however, she could not produce a copy of same or any record to determine or verify the exact amount of this personal indebtedness.

44.

Once again, Carrere failed to preserve and maintain the documents and papers reflecting this debt or account, including the actual balance owed, all without justification.

45.

Also in her Amended Bankruptcy Schedule F, debtor listed an indebtedness to Discover

Business ("Discover") as a "business debt" in the amount of $5,267.00.

46.

According to the actual statement produced by Carrere in response to a document request issued in connection with her examination in this case, however, said debtor produced a "Past Due Balance" correspondence of Discover issued by its apparent collection agent known as "Encore Receivable Management, Inc.", therein, seeking the sum of $5,267.75 from the debtor's spouse, Larry Carrere, on June 9, 2012, or well prior to the filing of her Chapter 7 petition.

47.

Upon information and belief, the debtor knowingly, intentionally, incorrectly and falsely scheduled the Discover debt in the amount of $5,267.75 as a business debt, as opposed to a consumer debt, for the sole purpose of inflating the total amount of her scheduled business debt to ensure that it exceeded the scheduled amount of her consumer debt.

48.

Also in her Amended Bankruptcy Schedule F, the debtor listed Dun & Bradstreet as a "business debt" in the amount of $600.00.

49.

Upon information and belief, however, the scheduled indebtedness of Dun & Bradstreet is actually a debt of Lamar and is not a debt of Carrere or one for which she is personally obligated.

50.

Upon further information and belief, the account for which this debt was listed was, in fact, carried by Dun & Bradstreet in the name of Lamar and, notwithstanding same, the debtor knowingly, intentionally and fraudulently scheduled the debt of Dun & Bradstreet as "business debt" for the purpose of inflating the amount of her scheduled business debt to ensure that it exceeded the amount of her scheduled consumer or personal debt.

51.

Also in her Amended Bankruptcy Schedule F, debtor scheduled Equitable Ascent Financial as a "personal" debt in an "unknown" amount.

52.

According to documents produced by the debtor in connection with her examination taken in this proceeding, however, Equitable Ascent Financial was owed the sum of $1,339.49 by Carrere's spouse, Larry Carrere.

53.

Further, the collection notice issued to the debtor's spouse was dated February 14, 2012, well in advance of the debtor's filing of her bankruptcy petition and well in advance of the debtor's amended schedules reflecting this indebtedness in an "unknown" amount.

54.

Once again, Carrere knowingly and fraudulently scheduled her indebtedness to Equitable Ascent Financial in an "unknown" amount, as opposed to the actual amount due and sought by this creditor (i.e., $1,339.49), for the sole purpose of decreasing her scheduled personal or consumer debt to ensure that it did not exceed the total scheduled amount of her business debt.

55.

Also in her Amended Bankruptcy Schedule F, Carrere listed the Federal Emergency Management Agency ("FEMA") as a "business debt" in the amount of $12,000.00.

56.

Upon information and belief, however, the FEMA indebtedness was a "consumer debt" and comprised a grant made to Carrere and her spouse, individually, and which grant or debt FEMA was subsequently seeking to recover from the debtor and/or her spouse.

57.

Once again, Carrere intentionally, knowingly and fraudulently listed the FEMA indebtedness as a "business debt" for the purpose of increasing the total amount of her scheduled business debt to ensure that it exceeded the scheduled or actual amount of her personal or consumer debt.

58.

Also in her Bankruptcy Schedule F, Carrere listed GECRB/Care Credit, as a personal debt in the amount of $800.00.

59.

According to a collection letter dated October 5, 2011, issued by Asset Acceptance, LLC regarding the GEMB/Care Credit debt, the actual amount of this personal or consumer debt is $1,887.85, and not the $800.00 scheduled by the debtor for this consumer debt.

60.

Once again, the debtor's scheduling of her indebtedness to GECRB/Care Credit in an amount that was some $1,000.00 less than the actual amount of the debt was knowingly, intentionally and fraudulently designed by the debtor in order to reflect in her schedules that the total scheduled consumer debt remained in an amount that was less than the total amount of her scheduled business debt.

61.

Also in Carrere's Amended Bankruptcy Schedule F, said debtor listed a purported "business debt" to Home Depot/Citi Bank in the amount of $7,533.00.

62.

A review of the documents produced by the debtor in connection with this account, however, reflects the existence of two (2) collection letters addressed to the limited liability

company Lamar.  Moreover, the debtor testified at her examination held in this case that she could not recall whether or not she had personally guaranteed this debt and that she simply listed debts of Lamar in her schedules whether or not she personally guaranteed those debts.

63.

Once again, the debtor's listing of the Home Depot debt of Lamar as that of her own was knowingly and intentionally fraudulent, and designed to artificially increase her scheduled business or non-consumer debt.

64.

Also in Carrere's Amended Bankruptcy Schedule F, said debtor listed a purported "business debt" due IDN-ACME, Inc. in the amount of $2,716.00.

65.

Based upon the statement of IDN-ACME, Inc. produced by the debtor in connection with her examination taken in this case, however, this statement reflects the account holder as "Lamar" and not the debtor.  Moreover, the debtor testified at her examination taken in this case that she did not recall signing a personal guarantee with IDN-ACME, Inc. but she listed this debt as a business debt anyway.

66.

Once again, the scheduling of the IDN-ACME, Inc. debt as a "business debt" comprised nothing more than an intentional, contrived and fraudulent attempt by the debtor to ensure that her total scheduled consumer debt did not exceed her total scheduled business debt, all in an effort to avoid having her Chapter 7 petition filing made subject to the "means test" under Section 707 of the Bankruptcy Code.

67.

In her Amended Bankruptcy Schedule F, Carrere listed "Interior/Exterior Building Supply"

as a "business debt" in the amount of $538.00.

68.

Based upon the documents submitted by the debtor in support of her scheduling of this indebtedness, however, the account with Interior/Exterior Building Supply ("Interior") was in the name of Lamar, and was not an account of Carrere individually.  Moreover, at the examination taken of Carrere in this case, she testified that she did not recall signing a personal guarantee with Interior, but she listed this debt of Lamar in her schedules anyway.

69.

Once again, the debtor's listing of the indebtedness of Lamar to Interior in her personal bankruptcy schedules comprises part of a continued, persistent knowing and fraudulent effort to avoid a potential dismissal of her case pursuant to Section 707(b) of the Bankruptcy Code by insuring that her scheduled business debt exceeded the total amount of her scheduled personal or consumer debt.

70.

Also in her Amended Bankruptcy Schedule F, Carrere listed, as a purported "business debt", Payment Outlets, Inc. in the amount of $1,166.00.

71.

According to the documents produced by Carrere in connection with her examination held in this case, however, the actual account on which this debt is based is an account of Lamar and the debtor individually.

72.

The debtor listed the debt of Payment Outlets, Inc. in her Bankruptcy Schedule for the sole purpose of attempting to artificially inflate the amount of her scheduled business debt and to ensure that the total amount of her scheduled business debt exceeded the total amount of her scheduled

consumer debt.

73.

In Carrere's Amended Bankruptcy Schedule F, she also list a purported "business debt" to Real Time Solutions in an "unknown" amount; however, upon examining the debtor in this case, said debtor testified that this debt is the same debt that she listed for American Home Mortgage Servicing in her amended Bankruptcy Schedule D.

74.

In Carrere's amended Bankruptcy Schedule F, said debtor also listed, as a purported "business debt", Rivers Building Supply, Inc. in the amount of $1,150.00.

75.

According to the debtor's testimony elicited at her exanimation held in this case, said debtor testified that she does not have any documents that reflect that she is personally obligated on this debt and, upon information and belief, Rivers Building Supply, Inc. is actually an account of Lamar for which the debtor is not personally obligated.

76.

Once again, and in a continued and persistent effort to ensure that the amount of her scheduled business debt exceed the amount of her scheduled personal debt, said debtor, with knowingly, intentionally and falsely listed Rivers Building Supply, Inc. as a business debt of herself individually.

77.

Also in her Amended Bankruptcy Schedule F, Carrere list two (2) purported "business debts" due the Small Business Administration ("SBA") in the amounts of $60,000.00 and $40,000.00.

78.

Based upon the documents produced by the debtor in connection with her examination in support of the two (2) debts reportedly due the SBA,  however, said documents reflect that the actual SBA Loans were made to Lamar, and not Marcia Carrere individually.

79.

Upon information and belief, the two (2) scheduled debts of the SBA are, in fact, debts of Lamar, and for which debts the debtor is not personally obligated.

80.

Once again and upon information and belief, the debtor scheduled the two (2) debts of Lamar to the SBA for the sole purpose of artificially inflating the scheduled amount of her purported business debt and to ensure that it or the amount thereof exceed the actual amount of her consumer debt.

81.

Also in Carrere's Amended Bankruptcy Schedule F, said debtor listed, as a purported "business debt", Weststar Credit Union in the amount of $30,000.00.

82.

At the examination held of Carrere in the within the Chapter 7 case, said debtor testified that Lamar was not a member of Weststar Credit Union, and that this was a credit card account issued to her spouse, Larry Carrere.

83.

Upon information and belief, the scheduled "business debt" due Weststar Credit Union is simply a credit charge account obtained and incurred by the debtor's spouse, was used by the debtor's spouse, at least in part, for personal expenditures, and comprised a consumer debt or community consumer debt of the debtor as opposed to non-consumer or business debt.

84.

Once again, the scheduling of the Weststar Credit Union debt as a business debt in the debtor's Amended Schedule "F" comprised part of a contrived, knowing and fraudulent attempt by not only the debtor, but also of her spouse, who would receive the benefit of discharge of the community or  community obligations via the Chapter 7 filing of his spouse, to ensure that the total amount of the scheduled business debt exceeded the total amount of the scheduled consumer debt in Carrere's Bankruptcy Schedules.

85.

Based upon the documents produced by the debtor in connection with her examination and the testimony elicited during same, Plaintiff submits that said debtor's actual petition date consumer debt is some $454,881.84 and that said debtor's non-consumer or business debt is some $348,906.93. Accordingly, Carrere's actual debts are primarily consumer in nature as reflected in the following chart of calculations which are based on the documents produced by the debtor and her testimony, to-wit:

A. Consumer Secured Debt
|      |                           |              |
|------|---------------------------|--------------|
| i.   | Clark County Credit Union - | $6,000.00    |
| ii.  | Santander Consumer USA -  | $81,802.00   |
| iii. | Whitney National Bank -   | $278,192.00  |
|      | Total Secured Consumer Debt - | $365,994.00 |

B. Non-Priority Consumer Unsecured Claims
|       |                                          |             |
|-------|------------------------------------------|-------------|
| i.    | ACS -                                    | $22,474.21  |
| ii.   | Advance America -                        | $300.00     |
| iii.  | Approved Cash Advance -                  | $300.00     |
| iv.   | Benfatti Air Conditioning & Refrigeration - | $7,621.00 |
| v.    | Capital One Management Services I -       | $unknown    |
| vi.   | Capital One Bank -                       | $350.00     |
| vii.  | Check City Partnership, LLC -            | $800.00     |
| viii. | Direct TV -                              | $200.00     |
| ix.   | Discover -                               | $5,267.00   |
| x.    | Equitable Ascent Financial -             | $1,339.49   |
| xi.   | FEMA -                                   | $12,000.00  |
| xii.  | First Mutual Financial -                 | $2,542.00   |
| xiii. | GE Money Bank -                          | $1,200.00   |

18

|  |  |  |
|---|---|---|
| xiv. | GECRB/Credit Care - | $1,887.85 |
| xv. | Lindy Bogs Hospital - | $600.00 |
| xvi. | Perfect Smile Dental - | $2,000.00 |
| xvii. | QC Services Limited Partnership - | $unknown |
| xviii. | Robertson, Reed & Young - | $unknown |
| xix. | Syndicated Office Systems - | $unknown |
| xx. | Weststar Credit Union - | $30,000.00 |
| | Total Consumer Unsecured - | $86,410.62 |

C. Secured Business Debt

|  |  |  |
|---|---|---|
| i. | American Home Mortgage Serv. - | $169,000.00 |
| | Total Secured Business Debt - | $169,000.00 |

D. Unsecured Business Debt

|  |  |  |
|---|---|---|
| i. | American Express - | $2,500.00 |
| ii. | Bank of America Credit Express - | $3,000.00 |
| iii. | Boreggo Bank - | $40,000.00 |
| iv. | City of New Orleans Health Department - | $1,200.00 |
| v. | CNA Surety - | $9,000.00[4] |
| vi. | First National Bank USA - | $7,400.00 |
| vii. | Lafarge North America, Inc. - | $4,156.00 |
| viii. | Newcorp, Inc. - | $40,000.00 |
| ix. | Real Time Solutions - | $unknown[5] |
| x. | Sony Chase Bank - | $2,500.00[6] |
| | Total Unsecured Business Debt - | $176,356.93 |

B. Consumer Priority Debt

|  |  |  |
|---|---|---|
| (i) | Bureau of Administration Adjudication - | $1,200.00 |
| (ii) | City of New Orleans - | $2,350.00 |
| | Total Purported Priority Debt - | $3,550.00[7] |

86.

Based on the foregoing chart, Carrere's total actual petition date consumer debt was $452,404.62 and her non-consumer debt was $345,356.93.

87.

---

[4] Based upon documents produced by the debtor, this is a debt of Lamar, and the debtor has been unable to produce a written guarantee concerning this schedule debt.

[5] Upon information and belief Real Time Solutions is a collection agent for American Home Mortgage Servicing, and American Home Mortgage Servicing was listed in the debtor's Schedule D and accounted for in this calculation as a business debt.

[6] The scheduled nature of this debt as a business debt is in dispute by Plaintiff.

[7] Whitney Bank disputes that the scheduled priority debts to the Bureau of Administration Adjudication and the City of New Orleans are personal obligations or debt of the debtor.

Carrere's debt, as of the petition date, was primarily consumer in nature.

**First Cause of Action – 11 U.S.C. § 727(a)(4)(A)**

88.

Plaintiff adopts and incorporates the allegations contained in paragraph 5 through 87 hereinabove.

89.

In her voluntary petition debtor attested, under penalty of perjury, that her debts were primarily "business" as opposed to "consumer".

90.

This attestation and/or representation made in the debtor's voluntary petition was knowingly incorrect and false, and comprised of false oath or account made in connection with the within Chapter 7 case.

91.

Carrere knowingly and fraudulently understated the amount of her consumer obligation or debt to ACS by some $11,474.21.

92.

The debtor knowingly, fraudulently and inaccurately scheduled the Benfatti Air Conditioning & Refrigeration debt in the amount of $7,621.00 as a "business debt" as opposed to a personal or consumer debt in her amended Bankruptcy Schedule F.

93.

The debtor also knowingly, fraudulently and inaccurately listed a debt of Lamar to Capital One Small Business as a "business debt" of hers in the amount of $50,000.00 in her Amended Bankruptcy Schedule F.

94.

The debtor also knowingly, fraudulently and inaccurately listed her personal debt or consumer debt to Check City Partnership, LLC as or in an "unknown" when, in fact, the said debtor had, in her possession, documents or correspondence reflecting that the amount of this personal or consumer debt was the sum of $800.00.

95.

The debtor knowingly and inaccurately listed an *in rem* obligation due on property she previously owned at 2412 Pressburg Street, New Orleans, Louisiana, and due the City of New Orleans, pursuant to City or Municipal Code statutes, as a personal "business debt for taxes" in the amount $1,200.00, when, in fact, she had no personal liability on this claim.

96.

Carrere knowingly and fraudulently listed a debt of Lamar to CNA Surety as a business debt of said debtor, in the amount of $9,000.00, when, in fact, the said debtor had no personal liability or obligation for the indebtedness of Lamar to CNA Surety.

97.

The debtor also knowingly and fraudulently listed in her Amended Schedule F a debt of Lamar to Coface Collections North America, Inc. as a "business debt" in the amount of $4,364.00 as a debt for she was personally obligated.

98.

The debtor also knowingly and fraudulently scheduled or listed in her Amended Schedule F her indebtedness to Discover Business as a purported "business debt" in lieu of personal or "consumer debt" in the amount of $5,267.00 when, in fact, this credit card account was a personal account of said debtor and/or that of her spouse in community.

99.

The debtor knowingly and fraudulently listed in her Amended Schedule F an indebtedness of Lamar to Dunn & Bradstreet as a "business debt", in the amount of $600.00, when, in fact, said debtor was not personally obligated for this debt.

100.

The debtor also knowingly and fraudulently listed in her Amended Schedule F a personal or consumer debt to Equitable Ascent Financial as "unknown" in amount when, in fact, the debtor had prior documentation from Equitable Ascent Financial therein reflecting that the amount of her consumer indebtedness thereto totaled some $1,339.49.

101.

The debtor also knowingly and fraudulently listed her indebtedness to FEMA in the amount of $12,000.00 as a "business debt" in lieu of a personal or consumer debt notwithstanding the fact that said debtor knew that the grants previously made by FEMA thereto and for which recovery was subsequently sought by FEMA were made to and for her and her spouse's benefit and not that of or to Lamar.

102.

The debtor also knowingly and fraudulently scheduled her personal debt to GECRB/Credit Care as $800.00 in her amended Bankruptcy Schedule F notwithstanding the fact that said debtor had possession or knowledge of documentation reflecting that the actual amount of this personal or consumer indebtedness was sum $1,887.85.

103.

The debtor also knowingly and fraudulently listed in her Amended Bankruptcy Schedule F, as a purported individual "business debt", a sum of $7,533.00 being owed to Home Depot/Citi Bank when, in fact, this account was an account of and in the name of Lamar, and for which account the

22

debtor was not personally obligated.

104.

The debtor also knowingly and fraudulently listed in her Amended Schedule F a purported "business debt" in the amount of $2,716.00 as being due IDN-ACME, Inc. when, in fact, this debt or account was a debt of Lamar to IDN-ACME, Inc., and for which company debt the debtor was not personally obligated for.

105.

The debtor also knowingly and fraudulently listed Lamar's indebtedness to Interior/Exterior Building Supply, in the amount of $538.00, as a purported "business debt" of the debtor, notwithstanding the fact that said debtor was not personally obligated for this account or debt of Lamar.

106.

The debtor also knowingly and fraudulently listed Lamar's indebtedness to Payment Outlets, Inc., in the amount of $1,100.66, as a "business debt" of said debtor, notwithstanding the fact that said debtor was not personally obligated for Lamar's debt to Payment Outlets, Inc.

107.

The debtor also knowingly and fraudulently listed Lamar's debt to Rivers Building Supply, Inc., in the amount of $1,150.00, as a "business debt" of the debtor when, in fact, the said debtor was not personally obligated for the debt of Lamar to River Building Supply, Inc.

108.

The debtor also knowingly and fraudulently listed Lamar's two (2) debts to the SBA, in the amounts of $60,000.00 and $40,000.00, as "business debts" of the debtor when, in fact, said debtor was not personally obligated for Lamar's scheduled debts to the SBA.

23

109.

The debtor also knowingly and fraudulently listed her community obligation to Sony Chase Bank USA, in the amount of $2,500.00, as a "business debt" as opposed to a "consumer debt", notwithstanding the fact that the charges on which this account were made were for the personal benefit or us of the debtor and/or her spouse.

110.

The debtor also knowingly and fraudulently listed in her Amended Schedule F her and/or her spouse's debt to Weststar Credit Union in the amount of $30,000.00 as a "business debt" when, in fact, this account was opened by her husband and the purchases made on this account, upon information and belief, were for his personal benefit and/or that of his debtor spouse.

111.

The afore-described representations made by the debtor in her Bankruptcy Schedule F, as described in the preceding paragraphs, comprise a false oath or account of the debtor in the within Chapter 7 case.

112.

By reason of the foregoing, the debtor's discharge should be denied pursuant to Section 727(a)(4)(A) of the Bankruptcy Code.

**Second Cause of Action - 11 U.S.C. § 727(a)(4)(B)**

113.

Plaintiff adopts and incorporates all allegations made paragraphs 5 through 110 hereinabove.

114.

The presentation, representation, scheduling and utilization of the debts of Lamar as described in paragraphs 31 (i.e., Capital One Small Business), 39 (i.e., Coface), 61 (i.e., Home

24

Depot), 64 (i.e., IND-ACME), 67 (i.e., Interior), 71 (i.e., Payment Outlets), and 74 (i.e., Rivers) as purported "business debts" of the debtor; the incorrect scheduling of "consumer debts" as business debts as described in paragraphs 25 (i.e., Benfetti), 46 (i.e., Discover), 49 (i.e., Dunn & Bradstreet) and 57 (i.e., FEMA); and the understating of the amount of her personal or consumer debts listed in paragraphs 21 (i.e., ACS), 35 (i.e., Check City Partnership, LLC), 43 (i.e., Direct TV), 51 (i.e., Equitable Ascent Financial), 58 (i.e., GECRB/Credit Care), 77 (i.e., SBA), and 83 (i.e., Wesstar), were made knowingly, fraudulently, and with malice aforethought, and were intended by the debtor to artificially inflate her scheduled "business debt" to the point where such debts exceed the scheduled "consumer" or personal debts, all for the purpose of avoiding application of the "means test" under Section 707 of the Bankruptcy Code by portraying that the debtor's debts were primarily consumer debts as opposed to non-consumer or business debts.

115.

The claims of those parties as described in the preceding paragraphs and as presented by the debtor in her Amended Schedule F were false and/or comprised the scheduling and presentation of a false claim.

116.

By reason of the foregoing, the debtor's discharge should be denied pursuant to Section 727(a)(4)(B) of the Bankruptcy Code.

**Third Cause of Action - 11 U.S.C. § 727(a)(3)**

117.

Plaintiff adopts and incorporates paragraphs 5 through 87 hereinabove.

118.

The debtor has concealed, destroyed or failed to keep or preserve recorded information, including documents, records and papers, from which her financial condition or business

transactions might be ascertained, without sufficient justification, as to the scheduled debts of Direct TV, Capital One Management, Bank of America, Capital One and the SBA.

119.

By reason of the foregoing, the debtor's should be denied a discharge pursuant to Section 727(a)(3) of the Bankruptcy Code.

**Fourth Cause of Action– Dismissal Pursuant to 11 U.S.C. § 707(b)**

120.

Plaintiff adopts and incorporates the allegations contained in paragraphs 4 through 112 hereinabove.

121.

The granting of relief to the debtor under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of Chapter 7.

122.

According to the debtor's Bankruptcy Schedule I filed of record in this proceeding on April 21, 2013, the debtor's gross monthly income was $7,324.80 and, after payroll deductions of $1,593.76 for payroll taxes and Social Security, $367.12 for insurance, and $40.30 for Union dues, her stated monthly net take home pay is $5,323.62.

123.

In her Bankruptcy Schedule J filed of record in this proceeding on April 21, 2013, debtor listed total monthly expenses of $7,408.77.

124.

The debtor has no dependents and, utilizing the applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as other Necessary Expenses issued by the Internal Revenue

26

Service for the geographical area in which said debtor resides, as in effect on the date of the order for relief, said debtor's monthly expenses, for purposes of Section 707(b)(2) of the Bankruptcy Code, are itemized as follows:

National Standards:

| | |
|---|---|
| Food: | $301 |
| Housekeeping Supplies: | $ 30 |
| Apparel and Services: | $ 86 |
| Personal Care Products and Services: | $ 32 |
| Miscellaneous: | $116 |
| **Total:** | **$583** |

Local Standards Housing & Utilities:      **$431**

Taxes and Insurance:                      **$2,001.18**

**Total Allowed Expenses**              **$2,997.18**

125.

With respect to the debtor's scheduled secured debt a monthly note payment of $669.00 is purportedly required to maintain possession of a motor vehicle, and the two (2) scheduled debts of the Bureau of Administration Adjudication and the City of New Orleans listed in the debtor's Schedule E would not comprise a priority claim under Section 507(a) of the Bankruptcy Code as these claims comprise a property tax or a tax measured by income or gross receipts for a taxable year ending on or before the date of the filing of the debtor's voluntary petition.

126.

The debtor's petition was filed in bad faith.

127.

A presumption of abuse exists as the debtor's current monthly income of $7,324, after being reduced by the following expenses of $2,997, and multiplied by 60, is not less than the lesser of (i) 25% of the debtor's non-priority unsecured claims in this case ($104,584), or $7,025.00, or $11,725.00.

128.

Accordingly, the debtor's voluntary petition was filed in bad faith and should be dismissed pursuant to Section 707(b)(2) of the Bankruptcy Code.

WHEREFORE, Whitney Bank prays that, after due proceedings are had, this Court enter in order denying the debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A), and/or 11 U.S.C. § 727(a)(4)(B), or, alternatively, that the chapter 7 case be dismissed pursuant to Section 707(b)(2) of the Bankruptcy Code.

Dated:  June 16, 2014

<div style="margin-left:40%">

Respectfully submitted,

_____ /s/ Rodney M. Jean
RODNEY M. JEAN ( NV Bar #1395)
Lionel Sawyer & Collins
300 S. 4th St., Suite 1700
Las Vegas, NV 89101

- and -

_____
DARRYL T. LANDWEHR (LA Bar #17677)
LANDWEHR LAW FIRM
1010 Common Street, Suite 1710
New Orleans, LA 70112
Telephone:  (504) 561-8086
Attorneys for Whitney Bank

</div>

28